IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD A. SCARLETT,** | : CIVIL ACTION NO. 1:23-CV-1042 |
| Petitioner | : (Judge Conner) |
| v. | : |
| **SUPERINTENDENT OF SCI-GREENE,** | : |
| Respondent | : |

# MEMORANDUM

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2254. Petitioner, Richard A. Scarlett, challenges his 2015 conviction for rape of a child, involuntary deviate sexual intercourse, unlawful contact with a minor, indecent assault of a person less than 13 years of age, simple assault, endangering the welfare of a child, and corruption of minors based on the victim's subsequent recantation of portions of his original testimony. We will deny the petition with prejudice.

**I.     Factual Background & Procedural History**

The charges against Scarlett arose from numerous instances of sexual abuse perpetrated by him against a minor victim, J.M.P., and physical abuse perpetrated on J.M.P. and two other minor victims, R.A.S. and D.M. (See generally Docs. 10-22, 10-23). R.A.S. is Scarlett's biological son, and at the time of the abuse J.M.P. and D.M. were his stepsons. (Id.) On March 11, 2015, Scarlett was convicted following a non-jury trial in the Cumberland County Court of Common Pleas of rape of a child, involuntary deviate sexual intercourse, unlawful contact with a minor, indecent assault, endangering the welfare of a child, corruption of minors, and simple

assault. (See Doc. 10-4 at 3). He was sentenced to 196-369 months' imprisonment followed by 540 months of supervised parole and 252 months of unsupervised probation. (Id.) He challenged the conviction through post-sentence motions, which the court denied on June 30, 2016. (Id. at 10). Scarlett filed a direct appeal to the Pennsylvania Superior Court, which affirmed the judgment of sentence on June 13, 2017. (Doc. 10-9). He then filed a petition for allowance of appeal to the Supreme Court, which denied the petition on January 3, 2018. (Doc. 10-1 at 5).

Scarlett filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") on November 5, 2018, seeking to reverse the convictions for the offenses for which J.M.P. was the victim based on J.M.P. recanting portions of his trial testimony. (Doc. 10-11). The court of common pleas conducted an evidentiary hearing on August 6, 2019, during which J.M.P. and J.M.P.'s grandmother testified. (See Doc. 10-25). J.M.P. testified that his trial testimony that Scarlett had sexually abused him was not true. (See id. at 6-13). He further testified that he had given the false testimony because his biological father and his stepmother—with whom he was living at the time of the trial—physically abused him, regularly locked him in his bedroom, and denied him food to coerce him into providing the false testimony because of their animus towards his biological mother and her family. (See id.) J.M.P. stated that prior to testifying in the PCRA hearing he told his grandmother and Scarlett's daughter, Bianca, that his trial testimony was false. (Id. at 10). J.M.P. stated that he thought of Bianca as his "stepsister kind of" and that he was communicating with her via Facebook Messenger when he told her that the trial testimony was false. (Id.) J.M.P. testified

that he "apologized" to Bianca for "everything that happened," that he "felt bad," and that he "was hoping she wouldn't hate [him]" when he told her about the false testimony. (Id. at 11). J.M.P. additionally stated that his original testimony of physical abuse by Scarlett was truthful, but that the testimony regarding sexual abuse was not. (Id. at 17).

J.M.P.'s grandmother, Brenda Spece, testified that J.M.P. was living with her at the time of the hearing and that she had formally adopted him on December 28, 2016. (Id.) Spece testified that the first night J.M.P. came to live with her—which was on an unrecalled date in 2016—he told her, "grandma, I'm going to hell . . . because I got up on the court stand and lied about Rich." (Id. at 24).

The court of common pleas conducted a second evidentiary hearing on December 17, 2019, during which the court heard testimony from J.M.P.'s stepmother, Jennifer Pannebaker. (See Doc. 10-26). Pannebaker testified that she was married to J.M.P.'s biological father from 2012 to 2016 and that she lived in the same home as J.M.P. and his biological father in the time during and immediately preceding Scarlett's trial. (Id. at 6). According to Pannebaker, J.M.P. began living in the home in late 2012 or early 2013 and began to tell them about Scarlett abusing him shortly thereafter. (Id.) Pannebaker testified that she did not prompt J.M.P. to disclose the abuse, that she did not tell him whether or how to testify against Scarlett, and that she did not abuse J.M.P. (Id. at 10-13). Pannebaker additionally testified that she had not met Scarlett prior to the criminal trial and that she had no reason to encourage J.M.P. to testify falsely. (Id. at 16-17).

The court of common pleas denied Scarlett's PCRA petition on May 19, 2020. (Doc. 10-16). Scarlett filed an appeal to the superior court on June 19, 2020. (Doc. 10-17). The court of common pleas issued an opinion addressing the appeal on August 19, 2020, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). (Doc. 10-18). The court found J.M.P.'s recantation not credible because the recantation "cherry-pick[ed] which previous testimony was truthful and which was not" and because J.M.P.'s original testimony "was corroborated by R.A.S. and other victims who did not hear J.M.P. testify and who had no detectable motive to testify falsely." (Id. at 7). The court stated that it could not discern "an apparent motive for J.M.P. to testify falsely at trial," but that J.M.P.'s efforts to reestablish a familial relationship with Scarlett's daughter appeared to create a motive for him to testify falsely in his recantation. (Id.) The court also found credible Pannebaker's testimony that she had not told J.M.P. how to testify in the original trial and that she had not abused J.M.P. (Id. at 5). The court accordingly "reject[ed]" J.M.P.'s recantation and recommended that the superior court deny his appeal. (Id. at 8).

The superior court affirmed the denial of Scarlett's PCRA petition on February 11, 2021. (Doc. 10-21). The court held that the court of common pleas applied sound reasoning in its credibility assessments of J.M.P. and Pannebaker's testimony and appropriately concluded that the PCRA petition lack merit on that basis. (Id. at 6). Scarlett filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 15, 2021. (Doc. 10-1 at 8).

Scarlett filed the instant petition on June 21, 2023, and the court received and docketed it on June 23, 2023. (Doc. 1). Scarlett additionally filed a brief in support

4

of the petition on the same day.  (Doc. 2).  Scarlett acknowledges that his petition is untimely under the one-year limitations period set out in 28 U.S.C. § 2244(d)(1), but he argues that his petition should be considered on its merits because he presents a credible claim of actual innocence based on J.M.P.'s recantation.  (Doc. 2 at 6).  Scarlett's claim of actual innocence is his only claim for habeas corpus relief.  (See Docs. 1-2).

Respondent responded to the petition on October 2, 2023.  (Docs. 10, 10-1).  Respondent argues the petition should be denied because it is untimely and because it does not state a federal claim.  (Doc. 10-1 at 9-21).  Scarlett filed a reply brief in support of the petition on October 23, 2023.  (Doc. 11).  The petition is ripe for review.

## II.    Discussion

We first consider respondent's argument that this court lacks jurisdiction because Scarlett fails to assert a federal claim.  "The Supreme Court has yet to decide whether a prisoner can obtain habeas relief based on a freestanding claim of actual innocence, having left the matter open time and again."  Bruce v. Warden Lewisburg USP, 868 F.3d 170, 183 (3d Cir. 2017) (collecting cases).  In the absence of guidance from the Supreme Court, our court of appeals has recognized the possibility of a "hypothetical freestanding actual innocence claim" as a basis for federal habeas corpus relief.  Id. at 184.

Habeas corpus claims based on the petitioner's assertion of actual innocence should be "initially tested against the more relaxed (but still stringent) actual innocence gateway standard."  Id. at 184 (citing United States v. Tyler, 732 F.3d 241,

246 (3d Cir. 2013)).  A petitioner's failure to meet the gateway standard is sufficient for the court to reject any hypothetical actual innocence claim that may exist under federal law.  Id. (citing Albrecht v. Horn, 485 F.3d 103, 126 (3d Cir. 2007).  Scarlett's attempt to excuse the untimeliness of his petition based on his actual innocence must likewise be tested under the actual innocence gateway standard.  See McQuiggin v. Perkins, 569 U.S. 383, 399 (2013) (citing Schlup v. Delo, 513 U.S. 298, 327 (3d Cir. 1995)).  Hence, because both the procedural default issue and the merits of a hypothetical freestanding actual innocence claim require this court to determine whether Scarlett can satisfy the actual innocence gateway standard, this court will assume for the sake of resolving this case that Scarlett has presented a federal claim and proceed to analyze whether he has satisfied the actual innocence gateway standard.

The actual innocence gateway standard requires a petitioner to show, in light of all evidence, that "it is more likely than not that no reasonable juror would have convicted him."  Bruce, 868 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)).  This standard is "purposefully demanding," and is only satisfied when the petitioner's case is "truly extraordinary."  Id. (internal quotation marks omitted) (quoting House v. Bell, 547 U.S. 518, 537-38 (2006)).

In considering a claim of actual innocence under the gateway standard, a court is not limited to the record that existed at trial, because actual innocence means "factual innocence, not mere legal insufficiency."  Id. (quoting Bousley, 523 U.S. at 623-24).  The court is therefore "not bound by the rules of admissibility that would govern at trial," and may consider "all the evidence, including that alleged to

6

have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Id. (internal quotation marks omitted) (quoting Schlup, 513 U.S. at 327-28).

The court's task in reviewing an actual innocence claim is not to exercise its own judgment as to whether a reasonable doubt existed, but rather to make a "probabilistic determination about what reasonable, properly instructed jurors would do." Id. (quoting Schlup, 513 U.S. at 329). The court must presume that the jurors would fairly consider all the evidence presented and conscientiously adhere to the requirement that guilt be proven beyond a reasonable doubt. Id. (citing Schlup, 513 U.S. at 329).

Scarlett's actual innocence claim was decided on its merits in state court and is accordingly governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet." Mays v. Hines, 592 U.S. __, 141 S. Ct. 1145, 1149 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions," Dunn v. Reeves, 594 U.S. __, 141 S. Ct. 2405, 2407 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement." Mays, 141 S. Ct. at 1149 (quoting Harrington, 562 U.S. at 102). When a claim has been decided on its merits in state court, federal court review of the claim is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

The new evidence Scarlett relies on for the actual innocence claim is J.M.P.'s recantation of the portions of his trial testimony pertaining to Scarlett sexually abusing him. Recantation testimony is generally viewed with "great suspicion." Landano v. Rafferty, 856 F.2d 569, 572 (3d Cir. 1988). In the absence of corroborating evidence or circumstances, recantation testimony is generally insufficient for a petitioner to satisfy the actual innocence gateway standard. Howell v. Superintendent Albion SCI, 978 F.3d 54, 60 (3d Cir. 2020). Recantation testimony, however, is not *per se* unreliable and may be relied on as the basis for a petitioner's actual innocence argument. Id. "Like any other form of evidence,

recantations should be analyzed on an individual and fact-specific basis" to determine whether they are sufficient to satisfy the actual innocence gateway standard. See id.

Factual findings by state courts regarding the reliability of recantation testimony must be afforded deference by federal courts. Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner can overcome the presumption of correctness by "clear and convincing evidence." 28 U.S.C. 2254(e)(1). Thus, when a state court has made a factual finding that recantation evidence is unreliable, a federal court is bound by that factual finding unless the petitioner presents "clear and convincing evidence to the contrary." Sistrunk v. Rozum, 674 F.3d 181, 191 (3d Cir. 2012) (citing Werts v. Vaughn, 228 F.3d 178 196 (3d Cir. 2000)).

The court of common pleas made such a factual finding in this case, determining that J.M.P.'s recantation testimony was not credible and that Jennifer Pannebaker's testimony contradicting the recantation was credible. We must defer to the court of common pleas' factual finding unless Scarlett can show by clear and convincing evidence that the recantation was credible. 28 U.S.C. § 2254(e)(1); Sistrunk, 674 F.3d at 191.

Scarlett has not presented clear and convincing evidence for this court to disregard the court of common pleas' factual findings. Scarlett impugns Pannebaker's credibility by noting that respondent "failed to mention that she participated in the identify theft of J.P. with her husband, J.P.'s father[,] and also failed to mention that JP made an allegation of sexual abuse against her and her

9

husband while he was living at their house." (Doc. 2 at 5). Scarlett further asserts that the purported identity theft by Pannebaker and J.M.P.'s biological father "rack[ed] up thousands of dollars worth of debt in [J.M.P.'s] name" and that Pannebaker exhibited "such abusive behavior" that J.M.P. was removed from her home. (Id. at 8). The factual record developed in state court, however, does not contain any support for the assertion that Pannebaker participated in the identity theft or that J.M.P. accused Pannebaker and his biological father of sexually abusing him, (see generally Docs. 10-25, 10-26),[1] and this court may not supplement the state court's factual record. Cullen, 563 U.S. at 181.

As for the assertion that Pannebaker physically abused J.M.P., the court of common pleas considered contradictory testimony on this factual issue between J.M.P. and Pannebaker and credited Pannebaker's account that she had not abused J.M.P. (See Doc. 10-18). We must defer to this factual finding. 28 U.S.C. § 2254(e)(1); Sistrunk, 674 F.3d at 191.

In sum, this court must defer to the court of common pleas' factual finding that J.M.P.'s recantation was not credible because Scarlett has not presented clear and convincing evidence to overcome the court's finding. J.M.P.'s recantation is the only new evidence on which Scarlett bases his actual innocence argument. In the absence of cogent exculpatory evidence, Scarlett cannot meet the actual innocence gateway standard.

---

[1] J.M.P.'s grandmother testified that his father "stole his identity and used his social security number," (Doc. 10-25 at 27), but no witnesses testified that Pannebaker participated in—or even knew about—the purported identity theft.

10

### III.    Conclusion

We will deny the petition for writ of habeas corpus with prejudice. A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further. Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). An appropriate order shall issue.

>   /S/ CHRISTOPHER C. CONNER
>   Christopher C. Conner
>   United States District Judge
>   Middle District of Pennsylvania

Dated:    December 4, 2023